Drake, Ob. J.,
delivered tbe opinion of tbe court:
This case arises under section 1768 of tbe Revised Statutes, which is as follows:
“Sec. 1768. During any recess of tbe Senate tbe President is authorized, in bis discretion, to suspend any civil officer appointed by and with tbe advice and consent of tbe Senate, except judges of the courts of tbe United States, until tbe end of the next session of the Senate, and to designate some suitable person, subject to be removed, in bis discretion, by tbe designation of another, to perform the duties of such suspended officer in tbe mean time; and tbe person so designated shall take tbe oath and give the bond required by law to be taken and given by tbe suspended officer, and shall, during tbe time be performs tbe duties of such officer, be entitled to tbe salary and emoluments of tbe office, no part of which shall belong to tbe officer suspended. Tbe President shall, within thirty days after tbe commencement of each session of tbe Senate, except for any office which in bis opinion ought not to be filled, nominate persons to fill all vacancies in office which existed at tbe meeting of tbe Senate, whether temporarily filled or not, and also in the place of all officers suspended; and if tbe Senate *153 during such session shall refuse to advise and consent to an appointment in the place of any suspended officer, then, and not otherwise, the President shall nominate another person as soon as practicable to the same session of the Senate for the office.”
On the part of the claimant it is urged that his suspension could continue no longer than “the end of the next session of the Senate;” and that as soon as that session ended he was entitled to resume the office from which he had been suspended.
On behalf of the defendants it is contended that that right of the claimant was cut off by the exception declared in the second sentence of that section, in these words: “The President shall, within thirty days after the commencement of each session of the Senate, except for any office which in his opinion ought not to be filled, nominate persons to fill all vacancies in office which existed at the meeting of the Senate, whether temporarily filled or not, and also in the place of all officers suspended,.” It is claimed on the part of the defendants, that the exception there gave the President the privilege of not filling an office at all, where the incumbent had been suspended; and that, in this case, the President had, from December 3,1877, until February, 1881, shown by his not nominating anyone for this office, that in his opinion it ought not to have been filled; and therefore that the claimant is not entitled to the salary of the office during that period.
The view we take of what is the controlling point of the case dispenses with the necessity of passing upon the questions presented in the above positions.
The real question involved, as it seems to us, is whether, assuming thé claimant’s right to resume the office at the end of the session of the Senate, he did not, by his own course of action, lose that right. In our opinion he did. He knew that the President had determined to vacate the office on the 31st of July, 1877, and that his resignation of it was desired by that day. He declined to tender it then, but, as we conceive, accomplished it on and after the 4th of December following.
The resignation of an office is the act of giving it up, and is synonymous with surrender, relinquishment, abandonment, renunciation. A written declaration of resignation is popularly supposed to be the mode by which such act is to be manifested; but, in law, if no statute require the act to be in writing, it. is *154 unnecessary. A resignation may be either in writing or by parol, and it may be either express or by implication. In either case the question is simply as to the intention to resign, surrender, relinquish, abandon, or renounce the office (Van Orsdall v. Hazard, 3 Hill (N. Y.), 243); and that intention maybe inferred from the conduct of the party (Ibid; State v. Aucker, 2 Richardson, 245). If that conduct take the shape of non-user or neglect of duties, so as to amount, in itself, to an actual vacation, but without express renunciation, of the office, it must be when the non-user or neglect is not only total and complete, but of such continuance, or under such circumstances as clearly indicate absolute relinquishment. (Page v. Hardin, 8 B. Monroe, 648.)
In the light of these doctrines, how stands the claimant here?
As before stated, he knew that his resignation had been asked for by the President, and he refused it, preferring rather to be suspended.
It appears, too, that he was well advised, at and immediately after the time of his suspension, that it was proper for him, in order to preserve his supposed right to the office, to appear before the appraiser, as he did several times within a week after that event, and demand to be allowed to discharge the duties of the office.
He was bound to know that if no nomination of his succesor should be made and confirmed at the next session of the Senate, it woidd be his right to resume the office immediately after the end of that session.
In the interval between his suspension and the end of that session, he knew that there was due him from the government the sum of $61.14, balance of salary from August 1 to August 9, 1877; which, so far as appears, he never sought to obtain payment of till the day after the Senate adjourned, when he received and receipted for it.
Knowing, or bound to know, all these things, what did he do when the day arrived that it was his legal right to resume the ■office of which he had not been deprived, but from which he had only been suspended? Did he then again demand to be allowed to return to his official station and duties ? Not at all. On the contrary, he called for the balance of salary that had been due him for nearly four months, and having received it turned his back on the custom-house, and, so far as appears, *155 never offered to perform service as assistant appraiser, or made the least movement to assert bis right to the office; nor did he make any demand, in any shape, for the salary subsequently accruing, until his petition was filed in this court on the 23d of March, 1881, demanding $8,875 as the salary of the office from the 31st of July, 1877, the date of his suspension, to the 18th of February, 1881. If these circumstances do not evince an intention to abandon, surrender, and renounce the office, it would not be easy to conceive of a.ny that would have had that effect. We have no doubt that the course he pursued was as cléar and absolute a resignation of the office as if he had addressed to the President a written declaration to that effect. On the 4th of December, 1877, he ceased, by his own act, to have any right to the office, and therefore his claim for the subsequent salary is wholly baseless.
As, however, his i>etition claims the salary during the period of his suspension, it is necessary to dispose of that demand. To do so it is only requisite to refer to the words of the statute, declaring that no part of the salary of a suspended officer shall belong to him during the period of his suspension.
The judgment of the court is that the claimant’s petition be dismissed.