## WILLIAMS *v.* STATE.

Opinion delivered March 9, 1908.

1. POLICE POWER—EXTENT.—The exercise of the State's police power is not limited to regulations to promote the public health, morals or safety, but may be extended to such regulations as promote public convenience and general prosperity. (Page 468.)

tain themselves in the business. The right to advertise and to solicit custom is an essential incident to business, so essential that its denial is destruction of the business. 120 U. S. 489, approved in 128 U. S. 129; 129 U. S. 143; 153 U. S. 289; 136 U. S. 104; 187 U. S. 622; 57 Ark. 24; 91 Tenn. 673; 20 S. W. 201; 98 Tenn. 258; 39 S. W. 1; 9 Wyo. 497; 35 Pac. 473; 70 Miss. 559; 13 So. 227; 50 La. Ann. 579; 23 So. 904; 126 Ind. 472; 137 Ill. 536; 55 O. St. 222; 187 Pa. St. 16, etc. See also 205 U. S. 100; 185 Ill. 139; 73 Mich. 288.

3. The contention that the act may be justified on the ground that it applies only to persons traveling on railroads, and that it tends to secure the comfort of other passengers, is untenable. It is an invasion of the right of freedom of speech. Cooley's Const. Lim. (6 Ed.), 510-518.

4. The act deprives the citizen of the equal protection of the law. 118 U. S. 368; 165 U. S. 150; 174 U. S. 96; 13 Fed. 733; 24 Am. Dec. 512; 183 U. S. 79; 184 U. S. 555; 75 Ark. 545; 72 Ark. 358; 185 Ill. 139; 65 Conn. 478; 117 Ill. 294; 155 Ill. 88; 141 Ill. 171; 147 Ill. 66.

*William F. Kirby*, Attorney General, and *Wood & Henderson*, for appellee.

The act only amounts to a regulation of the business of drumming for hotels, etc., to the extent of prohibiting it on the trains, cars, and at the depots of railroads and common carriers. Under the police power of the State, the Legislature has the right to enact such a law. 6 Words & Phrases Judicially Defined, 5425, "Police Power." In the exercise of this power the States have always regulated certain kinds of business and absolutely prohibited others. The power to prohibit any business which is dangerous to public safety, health or morals has never been denied, and the power to regulate any business in which the public is interested is also sustained. 8 Cyc. 1114-15, notes 71 and 89; 94 U. S. 113; Cooley's Const. Lim. (5 Ed.), 737, 739; 104 Ala. 261; 9 Rose's Notes, U. S. Rep. 21-45; 47 Ark. 126; 43 Ark. 83; 34 Ark. 603; 52 Ark. 301; 64 Ark. 152; 70 Ark. 221; 77 Ark. 506; *ante* p. 396.

It is conceded that railroad companies have the right to prohibit the following of one's private business on their trains and depot grounds. 3 Thompson on Negligence, § 3104; 67

2.  POLICE REGULATION—VALIDITY.—While it is the duty of the courts to determine whether or not a statutory police regulation is reasonable and falls fairly within the power of the Legislature, it is also their duty to resolve all doubts in favor of the legislative action and to sustain it unless it appears to be clearly outside the scope of reasonable and legitimate regulation.   (Page 469.)

3.  SAME—PROHIBITION OF DRUMMING ON TRAINS.—The act of April 30, 1907, for the suppression of drumming and soliciting upon railroad trains, and upon the premises of common carriers, is a reasonable regulation for the benefit of travellers on railroads.   (Page 470.)

4.  SAME—LAWFUL DISCRIMINATION.—The act of April 30, 1907, prohibiting all drumming or soliciting of business or patronage for any hotel, lodging house, bath house, physician, etc., upon railroad trains or depots, is not an unjust discrimination against the persons named therein.   (Page 471.)

Appeal from Garland Circuit Court; *W. H. Evans,* Judge; affirmed.

*Rose, Hemingway, Cantrell & Loughborough,* for appellant.

1.   The guaranty of life, liberty and pursuit of happiness secures to the citizen the right to pursue any calling not injurious to the public, and protects him against all interference with his business not in the lawful exercise of the police power.   This power is limited to those things essential to the safety, health, comfort and morals of the community.   Any act seeking to restrict the liberty of a citizen in matters that do not fall within the scope of the police power of the State, as thus defined, is unconstitutional and void.   64 Ark. 424; 127 U. S. 692; 58 Ark. 407; 111 U. S. 757; 123 U. S. 623; 152 U. S. 137; 165 U. S. 589; 198 U. S. 57; 193 U. S. 334; 190 Ill. 28; 98 N. Y. 108; *Id.* 105; 155 Ill. 88; 15 Fed. Cas. 652; 98 Cal. 73; Tiedeman, Lim. Pol. Power, § 102; 89 N. Y. Supp. 193; 36 W. Va. 856; 33 W. Va. 179; 147 Ill. 66; 157 N. Y. 116; 2 Hare's Am. Const. Law, 777; Cooley's Const. Lim. (6 Ed.), 738.

2.   In its application to this case, it is a mere begging of the question to say that the act only prevents appellant from soliciting custom for his boarding house, and does not interfere with his right to conduct it.   The effect of the act is to stifle competition, operating as it does in favor of the large hotels and long established boarding houses, which have become known, and against the newer establishments seeking to enter and main-

Ark. 401; 31 Ark. 50. If the law gives to the railroads this right, certainly the sovereign State from which the law emanates can prohibit it. Equal protection can not be said to be denied when the law operates alike upon all persons and property similarly situated. 78 Am. St. Rep. 229, and notes; 49 Ark. 291; Id. 325; 52 Ark. 529; 44 Ark. 167; 58 Ark. 407. If there is any doubt as to the constitutionality of an act, that doubt must be resolved in favor of its validity. 32 Ark. 131; 94 U. S. 113.

McCULLOCH, J. Appellant Williams is the keeper of a boarding house in the city of Hot Springs, and he appeals to this court from a judgment of conviction for drumming on a railroad train for his boarding house, in violation of a statute enacted by the General Assembly April 30, 1907. The section of this statute which it becomes important to consider is as follows.

"Section 1. That it shall be unlawful for any person or persons, except as hereinafter provided in section 2 of this act, to drum or solicit business or patronage for any hotel, lodging house, eating house, bath house, physician, masseur, surgeon, or other medical practitioner on the train, cars or depots of any railroad or common carrier operated or running within the State of Arkansas. Any person or persons plying or attempting to ply said vocation of drumming or soliciting, except as provided in section 2 of this act, upon the trains, cars, or depots of said railroads or common carriers, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than fifty ($50) nor more than one hundred dollars ($100) for each offense." Acts 1907, p. 553.

The title of the statute is "An act for the protection of passengers, and for the suppression of drumming and soliciting upon railroad trains and upon premises of common carriers."

The constitutionality of the statute is attacked on the grounds (1) that it is an unlawful restriction upon the liberty of action and inherent rights of the citizen in the pursuit of lawful business, and (2) that it deprives the classes of citizens therein named of the equal protection of the law in that it is an unjust discrimination against them.

Both points of attack upon the statute involve a considera-

tion of the State's exercise of the police power, its scope and limitations—a fruitful subject of discussion in all the courts of the country. While it is admitted by all that this power is incapable of precise definition, and that its lines of delimitation are not clearly marked, yet the abundance of discussion on the subject found in the numerous decisions of courts of last resort leaves us not without chart and compass for the ascertainment of its general scope. Happily we are not without precedents in the decisions of this court.

The Supreme Court of the United States in a recent case said: "We hold that the police powers of a State embrace regulations designed to promote the public convenience or the general prosperity, as well as regulations designed to promote the public health, the public morals or the public safety.  *  *  * And the validity of a police regulation, whether established directly by the State or by somebody acting under its sanction, must depend upon the circumstances of each case and the character of the regulation, whether arbitrary or reasonable and whether really designed to accomplish a legitimate public purpose." *Chicago, B. & Q. Ry. Co.* v. *Drainage Com'rs,* 200 U. S. 561, 592. In a still later case that court announced the same doctrine and upheld, on the ground that it was a regulation designed to promote the general prosperity, a statute of the State of Idaho which prohibited the herding and grazing of sheep within two miles of the dwellinghouse of a landowner. *Bacon* v. *Walker,* 204 U. S. 311. The court said: "We do not enter, therefore, into the discussion whether the sheep industry is legitimate and not offensive. Nor need we make extended comment on the two-mile limit. The selection of some limit is a legislative power, and it is only against the abuse of the power, if at all, that the courts may interpose. But the abuse must be obvious. It is not shown by quoting the provision which expresses the limit. The mere distance expresses nothing. It does not display the necessities of a settler on the public lands. It does not display what protection is needed, not from one sheep or a few sheep, but from a large flock of sheep, or the relation of the sheep industry to other industries. These may be considerations which induced the statutes, and we can not pronounce them insufficient on surmise or on the barren letter of the statute."

These cases are cited to show that the exercise of the police power is not limited to regulations to promote the public health, morals or safety, and that it may be so extended to such regulations as will promote the public convenience and general prosperity.

The same principle controlled this court in upholding the statute known as the screen law for the protection of miner. *McLean* v. *State,* 81 Ark. 304. The following cases may be examined with profit in determining the scope of this power: *Ohio Oil Co.* v. *Indiana,* 177 U. S. 190; *Clark* v. *Nash,* 198 U. S. 361; *Plessy* v. *Ferguson,* 163 U. S. 537.

This court has sustained a statute prohibiting physicians from soliciting patients through drummers. *Thompson* v. *Van Lear,* 77 Ark. 506; *Burrow* v. *Hot Springs, ante* p. 396. That statute was sustainable on different grounds, however —that of protection of public health and morals, though the same arguments are made against its validity as against the statute now under consideration.

In *Emerson* v. *McNeil,* 84 Ark. 552, the court sustained a town ordinance making it unlawful for any person to solicit customers for any hotel, boarding house, restaurant or hack line upon the depot platform of a railroad company while passenger trains were stopped there. The authority of an incorporated town to pass such an ordinance was found only the statute of the State giving authority to "regulate the drumming or soliciting of persons arriving on trains;" but the ordinance was prohibitory in its terms, and the court sustained it. The court said: "And the power conferred and exercised is not obnoxious to, or an interference with, any common right, but is a proper exercise of the police power, and is universally sustained." Citing McQuillin on Municipal Ordinances, § § 28, 184; *St. Paul* v. *Smith,* 27 Minn. 364; *Veneman* v. *Jones,* 118 Ind. 41. We think that decision is conclusive of the case at bar, and that it is correct in principle.

It is not doubted that there are limitations upon the legislative exercise of the police power, or that it is a judicial question for the courts to determine whether or not a given regulation is reasonable and falls fairly within the power of the Legislature. The duty of the courts to interfere when the police

power is unreasonably exercised is too well settled to be now questioned. *Louisiana & A. Ry. Co.* v. *State, ante* p. 12; *Helena* v. *Dwyer,* 64 Ark. 424; 2 Tiedeman on State & Federal Control of Persons & Property, p. 987; *Lawton* v. *Steele,* 152 U. S. 137; *Lochner* v. *New York,* 198 U. S. 57; Ex parte *Whitwell,* 98 Cal. 73.

It is the duty of courts, in testing the validity of a given regulation, to resolve all doubts in favor of the legislative action, and to sustain it unless it appear to be clearly outside the scope of reasonable and legitimate regulation. *Louisiana & A. Ry. Co.* v. *State, supra; Bacon* v. *Walker,* 204 U. S. 311.

Thus testing the statute we do not find it either unreasonable or beyond the power of the Legislature. The previous decision of this court hereinbefore referred to is conclusive of that question.

The Legislature clearly has the power to make regulation for the convenience and comfort of travellers on railroads, and this appears to be a reasonable regulation for their benefit. It prevents annoyance from the importunities of drummers. It is suggested in argument that the statute was especially aimed at the protection of travellers to the city of Hot Springs. If this be so, we can readily see additional reason why the regulation is a wholesome one. A large percentage of those travellers are persons from distant States, who are mostly complete strangers here, and many are sick. Drummers who swarm through the trains soliciting for physicians, bath-houses, hotels, etc., makes existence a burden to those who are subjected to their repeated solicitations. It is true that the traveller may turn a deaf ear to these importunities, but this does not render it any the less unpleasant and annoying. The drummer may keep within the law against disorderly conduct, and still render himself a source of annoyance to travellers by his much beseeching to be allowed to lead the way to a doctor or a hotel.

It is also argued that the act, literally construed, would prevent any person of the classes named from carrying on a private conversation on a train concerning his business. This is quite an extreme construction to place upon the statute, and one which the Legislature manifestly did not intend. We have no such question, however, before us on the facts presented in the record.

This statute is not an unreasonable restriction upon the privilege one should enjoy to solicit for his lawful business, which, it is rightly urged, is an incident to any business. It does not prevent any one from advertising his business or from soliciting patronage except upon trains, etc. This privilege is denied him for the public good. It is a principle which underlies every reasonable exercise of the police power that private rights must yield to the common welfare.

Neither is the statute an unjust discrimination against the class of persons named therein. The power of classification is, within reasonable bounds, with the Legislature, subject to judicial review. *Bacon* v. *Walker, supra; Farmers' & Merchants' Insurance Co.* v. *Debney,* 189 U. S. 301; *Orient Insurance Co.* v. *Daggs,* 172 U. S. 557; *Ozan Lumber Co.* v. *Union County Bank,* 207 U. S. 256.

The Legislature, in framing this statute, met a condition which existed, and not an imaginary or improbable one. The class of drummers or solicitors mentioned in the act are doubtless the only ones who ply their vocation to any extent on railroad trains. It is rare that the commercial drummer finds opportunity to meet customers and solicit trade on trains, therefore the law-makers deemed it unnecessary to legislate against an occasional act of that kind.

Affirmed.

WOOD, J., dissenting.